926 A.2d 328

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. RAHEEM MEANS, DEFENDANT–APPELLANT.

Argued January 16, 2007—Decided July 11, 2007.

*Jay L. Wilensky*, Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars*, Public Defender, attorney; *Mr. Wilensky* and *Seon Jeong Lee*, Assistant Deputy Public Defender, of counsel and on the briefs).

*LeeAnn Cunningham*, Assistant Prosecutor, argued the cause for respondent (*Paula T. Dow*, Essex County Prosecutor, attorney).

*Deborah C. Bartolomey*, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Stuart Rabner*, Attorney General, attorney).

*Richard D. Pompelio* submitted a brief on behalf of amicus curiae New Jersey Crime Victims' Law Center (*Mr. Pompelio*, attorney; *Mr. Pompelio* and *Laura Tyson*, on the brief).

Justice WALLACE, JR. delivered the opinion of the Court.

A plea agreement between defendant Raheem Means and the State was set aside after the prosecutor notified the court that the victims had not been informed of the plea agreement. Thereafter, defendant entered into a second plea agreement with the State that was not as favorable as the initial agreement. Defendant

appealed and the Appellate Division affirmed. This appeal addresses the issue of whether a trial court may set aside a plea agreement solely because the prosecutor failed to give notice to the victims prior to entering into the plea agreement. We conclude that it was error to grant the State's motion to set aside the plea agreement and we now reverse.

I.

We relate the facts and procedural history from the record below. In August 2001, defendant escaped from a halfway house in Newark. Subsequently, around midnight on August 12, 2001, I.P., a thirteen-year-old girl, ran away from her grandmother's home. At some point, I.P. saw defendant in a park. Defendant, who was then twenty-three years of age, knew I.P. and talked to her. When she told defendant she had run away, defendant tried to convince her to return home. I.P. refused because she feared the police were at her house. Defendant then suggested that they go to a motel, and I.P. agreed. The two then went to a motel in Irvington where defendant and I.P. engaged in consensual sex.

I.P. returned home in the morning and revealed her encounter with defendant. I.P. was then taken to Beth Israel Hospital for evaluation. She also gave a statement to the police outlining what transpired with defendant. The police apprehended defendant on December 31, 2001. On April 30, 2002, the Essex County Grand Jury indicted defendant for second-degree kidnapping, *N.J.S.A.* 2C:13–1b(1); second-degree sexual assault, *N.J.S.A.* 2C:14–2c(4); and third-degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4a (first indictment). At some point, I.P.'s father indicated to the authorities that he wanted to be present at sentencing.

A second group of charges against defendant arose from his conduct at a New Year's Eve party in Montclair on December 31, 2001. Defendant and Cedric Lewis entered the apartment where the party was held. Holding a handgun in his hand, defendant ordered eight people to line up against the wall and instructed Lewis to remove any valuables from the victims. Defendant then

forced the victims to disrobe to ensure that no one had a weapon. Defendant was apprehended as he attempted to leave the building. A search of defendant revealed an unlicensed handgun and five live rounds of ammunition. A search of Lewis revealed $325 in cash.

On May 10, 2002, defendant was indicted for second-degree conspiracy to commit robbery, *N.J.S.A.* 2C:5–2 and *N.J.S.A.* 2C:15–1; second-degree burglary, *N.J.S.A.* 2C:18–2; five counts of first-degree robbery, *N.J.S.A.* 2C:15–1; third-degree aggravated assault, *N.J.S.A.* 2C:12–1b(2); fourth-degree aggravated assault, *N.J.S.A.* 2C:12–1b(4); third-degree possession of a handgun without a permit, *N.J.S.A.* 2C:39–5b; second-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4a; and fourth-degree possession of hollow point bullets, *N.J.S.A.* 2C:39–3f(1) (second indictment). In a separate indictment, also issued on May 10, 2002, defendant was charged with second-degree possession of a weapon by a convicted felon, *N.J.S.A.* 2C:39–7b (third indictment).

On August 16, 2002, an assistant prosecutor tendered a plea offer to defendant. The offer provided that defendant would plead guilty to the following charges in the first and second indictments: third-degree child endangerment, five counts of first-degree robbery, third-degree possession of a weapon without a license, and second-degree possession of a weapon for an unlawful purpose. The plea was made in exchange for a recommended sentence of thirteen years with eighty-five percent parole ineligibility to run concurrent to the sentence then being served. The prosecutor further agreed to recommend for dismissal the remaining charges in those two indictments. There was no reference to the third indictment that contained the sole charge of possession of a weapon by a felon.

After explaining the essential terms of the plea agreement, the trial court indicated to defendant at the plea hearing that it would impose a sentence of ten years with eighty-five percent parole ineligibility and not the thirteen-year sentence in the agreement.

Defendant was subsequently sworn in and gave a factual basis for his guilty pleas. The trial court explained that if, after reviewing the pre-sentence report, he concluded that a ten-year sentence was not appropriate, defendant would then have the right to withdraw his guilty pleas. The trial court ultimately accepted defendant's pleas, executed the supplemental plea form confirming that the court had represented to defendant that it would impose a ten-year sentence, and scheduled sentencing for October 18, 2002.

The sentencing hearing was continued to November 16, 2002. At that time, a supervisor in the Prosecutor's Office sought to vacate defendant's pleas because the plea offer had been made to defendant without consulting the victims. The State's motion was oral, and no brief or certification was filed in support of the motion. The trial court granted the motion and vacated the pleas.

Almost six months later, before a different trial judge, defendant entered into a second plea agreement. Defendant agreed to plead guilty to the same number of charges, but not all of the individual charges were the same as in the first plea agreement. The prosecutor agreed to recommend a fifteen-year sentence with eighty-five percent parole ineligibility and to dismiss the remaining counts in the two indictments and the single charge in the third indictment. Defendant again gave a factual statement and the court accepted the plea. Defendant subsequently sought to withdraw his plea, but that motion was denied. On February 5, 2004, the trial court sentenced defendant to a concurrent term of fifteen years with eighty-five percent parole ineligibility. Thus, defendant actually received a custodial sentence five years greater than he would have under the first plea agreement.

Defendant appealed. After transcripts of the hearing on the State's motion to vacate the plea agreement could not be found, defendant sought a limited remand for the trial court to reconstruct the record. The Appellate Division granted the motion. On May 18, 2005, the first trial court wrote to the Appellate Division explaining that:

On November 16, 2002[,] Eileen Cosgrove, Esq.[,] who was a supervisor in the Prosecutor's Office, requested that the plea offer be withdrawn before sentencing. The basis of her request was that [the assistant prosecutor] had made his offer without talking to the victims (or in the case of endangering the welfare of a child, speaking with the victim's father). She indicated that the Prosecutor's Office required prior consultation with the victims. [The assistant prosecutor] confirmed, for the first time, that this had not been done in this case.

Since the plea offer had been made without consulting with the victims, and since [defendant] had not yet been sentenced, I signed an order vacating the pleas and reinstating the not guilty pleas.

Defendant's appeal was subsequently scheduled for argument on the Excessive Sentencing Oral Argument Calendar. Following argument, the panel affirmed defendant's sentence. We granted defendant's petition for certification. 188 *N.J.* 219, 902 *A.*2d 1236 (2006). We also granted the motions of the Attorney General and the New Jersey Crime Victim's Law Center to appear as amici curiae.

## II.

Defendant argues that neither the Victim's Rights Amendment nor any other statutory enactments require or authorize the State to withdraw a guilty plea that defendant agreed to as part of a plea agreement. Defendant asserts that his rights to due process and fundamental fairness were violated when the trial court vacated his original plea and sentence.

The State counters that the trial court properly vacated defendant's guilty pleas before sentencing because the child victim's family was entitled to notice and an opportunity to offer input regarding the plea. The amici support the State's position and urge that the constitutional and statutory rights of crime victims must be given full accord by the courts in assessing any claims made by defendant.

## III.

### A.

In November 1991, the Victim's Rights Amendment (Amendment) was adopted. Article I, Paragraph 22 of the New Jersey Constitution provides that:

> A victim of a crime shall be treated with fairness, compassion and respect by the criminal justice system. A victim of a crime shall not be denied the right to be present at public judicial proceedings except when, prior to completing testimony as a witness, the victim is properly sequestered in accordance with law or the Rules Governing the Courts of the State of New Jersey. A victim of a crime shall be entitled to those rights and remedies as may be provided by the Legislature.

The Amendment also reinforced the Crime Victim's Bill of Rights, *N.J.S.A.* 52:4B–34 to –38, which was originally enacted in 1985. *See State v. Muhammad,* 145 *N.J.* 23, 33–35, 678 *A.*2d 164 (1996).

Specifically, the Crime Victim's Bill of Rights granted crime victims and witnesses the right "[t]o be treated with dignity and compassion[,]" the right "[t]o be informed about the criminal justice process[,]" the right "[t]o be advised of case progress and final disposition[,]" and the right "[t]o make, prior to sentencing, an in-person statement directly to the sentencing court concerning the impact of the crime." *N.J.S.A.* 52:4B–36a, b, k, and n. The Legislature also directed the Attorney General to "promulgate standards for law enforcement agencies to ensure that the rights of crime victims are enforced," *N.J.S.A.* 52:4B–44a, and expressly instructed that prosecutors must provide

> [a]ssistance to victims in submitting a written impact statement to a representative of the county prosecutor's office concerning the impact of the crime which shall be considered prior to the prosecutor's accepting a negotiated plea agreement containing recommendations as to sentence and assistance to victims in securing an explanation of the terms of any such agreement and the reasons for the agreement.
> [*N.J.S.A.* 52:4B–44b(20).]

Thereafter, the Attorney General issued standards for all law enforcement agencies to follow in order to protect the rights of crime victims. Notably, one standard requires the agency to notify crime victims of any "[n]egotiated plea on all charges." *Attorney General Standards To Ensure The Rights of Crime Victims,* pt. 2, § I.B., at 12–13 (Apr. 28, 1993), *available at* http:// www.state.nj.us/lps/dcj/agguide/3victims.pdf. Further, the Attorney General directed that "[w]hen appropriate, the views of victims of violent crime should be brought to the attention of the court on ... plea agreements ... [and] sentencing[.]" *Id.* at pt. 2, § II.I., at 21. The comment to that provision explained in more detail that

[i]t is recommended that prosecutors consult with every victim of violent crime, explaining how the plea negotiations process operates, what negotiating posture the prosecution has adopted and why that posture was chosen. Prosecutors should always attempt to take into account the victim's views before reaching a final decision. Victims legitimately view the resolution of and sentencing in a case as an evaluation of the harm done to them.

[*Id.* at pt. 2, § II.I., commentary at 22.]

Those standards also inform us that "[n]othing contained herein should be construed to alter or limit the authority or discretion of the prosecutor to enter into any plea agreement which the prosecutor deems appropriate." *Id.* at pt. 2, § II.F., at 21.

## B.

"Plea bargaining has become firmly institutionalized in this State as a legitimate, respectable and pragmatic tool in the efficient and fair administration of criminal justice." *State v. Taylor,* 80 *N.J.* 353, 360–61, 403 *A.*2d 889 (1979) (citations omitted). A key component of plea bargaining "is the 'mutuality of advantage' it affords to both defendant and the State." *Id.* at 361, 403 *A.*2d 889 (citations omitted). Simply stated, plea bargaining "enables a defendant to reduce his penal exposure and avoid the stress of trial while assuring the State that the wrongdoer will be punished and that scarce and vital judicial and prosecutorial resources will be conserved through a speedy resolution of the controversy." *Ibid.* (citations omitted).

Generally, once an agreement is reached and the defendant pleads guilty, "[d]ue process concerns ... inhibit the ability of the prosecutor to withdraw from a guilty plea." *State v. Warren,* 115 *N.J.* 433, 445, 558 *A.*2d 1312 (1989). Those due process "concerns have mostly to do with the voluntary and knowing waiver by the defendant of constitutional rights, which is the basis for entering a guilty plea." *Ibid.* (citations omitted). The rights a defendant waives include the right to have a jury decide the matter, the right to counsel, and the right to cross-examine witnesses. *Id.* at 443, 558 *A.*2d 1312.

Our Court Rules prescribe the standards governing the plea, plea agreements, and withdrawals.

A defendant may plead only guilty or not guilty to an offense. The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.... If a plea of guilty is refused, no admission made by the defendant shall be admissible in evidence against the defendant at trial. [R. 3:9–2.]

"The prosecutor and defense counsel may engage in discussions relating to pleas and sentences...." *R.* 3:9–3(a). And, with the consent of both sides, the court may indicate

the maximum sentence it would impose in the event the defendant enters a plea of guilty, assuming ... that the information in the presentence report at the time of sentence is as has been represented to the court at the time of the disclosure and supports its determination that the interests of justice would be served thereby. [R. 3:9–3(c).]

■ In respect to the rejection or withdrawal of a plea, *Rule* 3:9–3(e) provides that "the court may vacate the plea or the defendant shall be permitted to withdraw the plea" if "at the time of sentencing the court determines that the interests of justice would not be served by effectuating the agreement ... or by imposing sentence in accordance with the court's previous indications of sentence[.]" Thus, our Rules expressly authorize the trial court to vacate the plea when the interests of justice will not be served by approval of the terms of the plea agreement.

■ We have emphasized that "[a]ll plea-bargain jurisprudence recognizes the important interest of finality to pleas." *State v. Smullen*, 118 *N.J.* 408, 416, 571 *A.*2d 1305 (1990). Even so, *Rule* 3:21–1 expressly authorizes a defendant to move before sentencing to withdraw a plea, and the trial court may grant the motion in its discretion. *Ibid.* However, a defendant carries a heavier burden to succeed in withdrawing a plea "when the plea is entered pursuant to a plea bargain." *Ibid.* (citations omitted). In any event, "the measure of what constitutes fair and just reason

for withdrawal must be reposed in the sound confidence of the court." *Id.* at 417, 571 *A.*2d 1305.

Our Rules do not contain a corresponding right of the State to withdraw from a plea agreement. *Warren, supra,* 115 *N.J.* at 443–44, 558 *A.*2d 1312. "[A]lthough notions of fairness apply to each side, the State as well as the defendant, the defendant's constitutional rights and interests weigh more heavily in the scale." *Id.* at 443, 558 *A.*2d 1312; *see also State v. Moore,* 188 *N.J.* 182, 211 n. 13, 902 *A.*2d 1212 (2006) (noting that when balance of competing interests between crime victim and defendant is struck, "greatest protection goes to a criminal defendant whose liberty interest is at stake").

## C.

■ Against the background of those general principles, we address the issues in this appeal. It is undisputed that at least the victims' statutory rights and the Attorney General's guidelines were violated when the victims were not notified of the plea negotiations and anticipated sentence. Beyond that, the presentence report indicated that as early as October 7, 2002, the child victim's father expressed to the Prosecutor's Office that "he want[ed] to be present at the sentencing." However, it was not until after the plea agreement was executed, defendant pled guilty, and sentencing was about to take place, that the prosecutor sought to vacate the plea agreement because the victims had not been notified.

■ The trial court should consider the concerns of the victim or the victim's family, but the court may not impinge on a defendant's constitutional rights. *State v. Timmendequas,* 161 *N.J.* 515, 554–56, 737 *A.*2d 55 (1999) (noting it is not error to consider victim's family's concerns "provided that the constitutional rights of the defendant are not denied or infringed on by that decision") (emphasis omitted), *cert. denied,* 534 *U.S.* 858, 122 *S.Ct.* 136, 151 *L.Ed.*2d 89 (2001); *see Muhammad, supra,* 145 *N.J.* at 58–59, 678 *A.*2d 164. Because the constitutional considerations of

both the defendant and the victims must be weighed, we find that when the trial court vacated the pleas, it was not in a position to fairly evaluate those concerns without knowing if the victims had an objection to the plea agreement and, if so, what the objection was.

The statement by the supervising prosecutor demonstrated that the primary reason for the prosecutor's concern was the failure to notify the child victim's father of the plea negotiations. Significantly, if defendant had solely pled guilty under the first indictment that involved the child victim, defendant was facing a probable sentence in the second-degree range. The plea agreement, however, provided for a sentence in the first-degree range based on the first-degree robbery offenses in the second indictment that did not involve the child victim. Therefore, it is unclear whether the victim would have had a significant objection to the plea agreement because defendant was going to serve a longer sentence than he would have received if only the crimes against the child victim were considered. Notably, the record is silent in respect of any attempt to partially remedy the prosecutor's oversight by postponing defendant's sentence to a time when the victims would have fair notice and then, if any victim so desired, the opportunity to appear at sentencing to address the court.

Rather than granting the State's motion to vacate the pleas, the trial court should have postponed sentencing to allow the prosecutor time to notify the victims of the terms of the plea agreement, receive and evaluate the victim's comments, and inform them of their right to speak at sentencing. It may have developed that the victims would not have objected to the plea agreement, or even if there was an objection, the prosecutor may have decided the plea agreement was nevertheless appropriate. The victims may have chosen to appear and to speak at the time of sentencing, which they have a right to do. At that time, the trial court would have been in a far better position to evaluate whether to continue to accept the terms of the plea agreement or to inform defendant that in the interest of justice the plea would be rejected. In the

event the court rejected the plea, defendant could either withdraw his plea or enter into a new plea agreement.

■ Moreover, our conclusion is informed by basic principles of contract law. When two parties reach a meeting of the minds and consideration is present, the agreement should be enforced. The essence of a plea agreement is that the parties agree that defendant will plead guilty to certain offenses in exchange for the prosecution's recommendation to dismiss other charges and suggest a certain sentence, all subject to the right of the court to accept or reject the agreement in the interest of justice. Valid consideration exists to support the agreement. The unilateral mistake made by the prosecutor, standing alone, was not sufficient to invalidate the plea agreement.

In summary, the sole basis offered by the trial court for vacating the plea was the prosecutor's acknowledgment that the victims had not been notified prior to making the plea offer to defendant. We find that basis insufficient to vacate the plea agreement. By vacating the plea agreement without first allowing notice to be given to the victims, the trial court was not fairly able to determine whether to accept the plea or reject the plea agreement in the interest of justice.[1]

## IV.

We reverse the judgment of the Appellate Division, reinstate the original plea agreement, and remand to the trial court for further proceedings consistent with this opinion.

---

[1] Our dissenting colleague urges that defendant waived the right to challenge the vacating of his August 16, 2002 guilty plea because defendant did not preserve the issue when he subsequently entered a guilty plea. Because the parties neither raised that argument below nor included it in the briefs before us, we find no need to address that argument. *Gac v. Gac*, 186 *N.J.* 535, 547, 897 A.2d 1018 (2006).

JUSTICE RIVERA–SOTO, dissenting.

In August 2002, defendant Raheem Means faced two separate sets of criminal charges. The first set of charges resulted from defendant, then a twenty-three-year-old man, engaging in sexual relations with a thirteen-year-old runaway; the second arose from a robbery at gunpoint of five victims. Seeking a consolidated disposition, defendant negotiated a plea agreement: in exchange for the State recommending a thirteen-year term of imprisonment subject to a mandatory period of parole ineligibility under the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, defendant would plead guilty to one count of third-degree child endangerment, in violation of *N.J.S.A.* 2C:24–4(a); five counts of first-degree robbery, in violation of *N.J.S.A.* 2C:15–1; one count of third-degree unlawful possession of a weapon, in violation of *N.J.S.A.* 2C:39–5(b); and one count of second-degree possession of a weapon for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4(a). On August 16, 2002, when defendant first appeared to enter his pleas, the trial court advised defendant that the sentence to be imposed would be a ten-year term of incarceration, subject to NERA. Defendant pled guilty according to the terms of that plea agreement.

At sentencing on November 16, 2002, the State sought to withdraw its consent to defendant's guilty plea because the father of the minor child with whom defendant had sexual intercourse objected to the plea deal. The trial court granted the State's oral motion to vacate the plea. Several months later, on May 2, 2003, defendant was offered—and he accepted—a new plea deal: in exchange for a fifteen-year term of imprisonment also subject to NERA, defendant was to plead to one count of third-degree aggravated criminal sexual contact, in violation of *N.J.S.A.* 2C:14–3; one count of third-degree child endangerment, in violation of *N.J.S.A* 2C:24–4(a); three counts of first-degree robbery, in violation of *N.J.S.A.* 2C:15–1; one count of third-degree unlawful possession of a weapon, in violation of *N.J.S.A.* 2C:39–5(b); one count of aggravated assault, in violation of *N.J.S.A.* 2C:12–1(b)(4);

and one count of fourth-degree unlawful possession of hollow-point bullets, in violation of *N.J.S.A* 2C:39–3(f)(1). Later that same day, defendant entered his guilty pleas without reserving any objection to the earlier vacated plea agreement, and was sentenced in accordance with that plea deal.

As of the February 5, 2004 sentencing following his second plea hearing, defendant had made no application to withdraw his plea, causing the trial court to note that it was "not aware of any filing of any motion, by the defendant, to withdraw his guilty pleas." It was only after the trial court explained that it was willing to address an oral motion to withdraw that defendant's counsel stated that defendant "wishe[d] to withdraw his pleas." Tellingly, the basis defendant advanced for his request to withdraw his guilty pleas was *not* the reason that animates the majority. Instead, defendant's desire to vacate his pleas was motivated by his claim that his lawyer had lied to him, had withheld evidence from him, and had failed to defend him vigorously. The trial court handily rejected all of defendant's claims, finding that defendant's pleas were knowing and voluntary, and were entered into after defendant understood the charges against him, after he understood the maximum penalties he faced, and after he was represented by "competent counsel[.]" The trial court concluded:

> He admitted all of the charges. He entered the pleas freely and voluntarily, after voluntarily waiving his rights to a jury trial, his right to confront [ ] witnesses against him and his right not to incriminate himself. He was not threatened or forced. And, as I've said, there was a factual basis established for the entry of the pleas. He understood about all the penalties that would be imposed. And I find, after my review of the transcript, that I'm not persuaded otherwise.

On appeal, defendant—for the first time—sought to vacate his guilty pleas on the basis that he was entitled to the benefit of the first plea deal he struck. By an order, the Appellate Division rejected that argument and affirmed defendant's conviction and sentence.

Blending constitutional precepts with principles of contract law, the majority concludes that it was error for the trial court to vacate defendant's August 16, 2002 guilty pleas, which resulted, as

the majority describes, in defendant "actually receiv[ing] a custodial sentence five years greater than he would have under the first plea agreement." *Ante,* 191 *N.J.* at 615, 926 *A.*2d at 331 (2007). Because defendant's claims are procedurally barred and the majority's reasoning disregards the proper standard of review, I respectfully dissent.

## I.

Our jurisprudence in respect of the preclusive nature of guilty pleas is clear: " 'Generally, a defendant who pleads guilty is prohibited from raising, on appeal, the contention that the State violated his constitutional rights prior to the plea.' " *State v. Knight,* 183 *N.J.* 449, 470, 874 *A.*2d 546 (2005) (quoting *State v. Crawley,* 149 *N.J.* 310, 316, 693 *A.*2d 859 (1997)). There are but "three exceptions to the general rule of waiver." *Id.* at 471, 874 *A.*2d 546. They are: (1) the right "to appeal the denial of a Fourth Amendment-based motion to suppress evidence[,]" *ibid.*; (2) the right "to appeal the denial of admission into a pretrial intervention program[,]" *ibid.*; and (3) the right to preserve an issue for appellate review but only upon the entry of a conditional guilty plea as provided in *Rule* 3:9–3(f), *ibid.* The operative concept is plain: if a defendant's "plea was unconditional and [defendant] did not preserve the issue[,]" then defendant has "waived his right to contest" the question he did not preserve. *Ibid.* We recently reaffirmed the primacy of those principles. *State v. Wakefield,* 190 *N.J.* 397, 417 n. 1, 921 *A.*2d 954 (2007).

Defendant does not raise a Fourth Amendment search or seizure question and, as a result, the first exception to the guilty plea waiver rule does not apply. Further, as this case does not involve any application for admission to a pretrial intervention program, the second exception also does not lie. Thus, defendant's complaint concerning his earlier vacated plea deal can be heard if and only if defendant preserved the issue by entering a conditional plea pursuant to *Rule* 3:9–3(f). However, because defendant did not preserve the question of the propriety of the

trial court vacating his August 16, 2002 guilty pleas, the substantive claim on which the majority relies simply is not before us; it has been waived.

*Rule* 3:9–3(f) specifically provides that "[w]ith the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty reserving on the record the right to appeal from the adverse determination of any specified pretrial motion." If defendant was so inclined, he could have sought to preserve for appellate review his vacated plea agreement. In that event, the State would have had a fair opportunity to gauge whether, in light of defendant's desire to protract his case by preserving issues for appeal, the State remained willing to continue the bargain it and defendant had brokered. Yet, that is precisely what defendant did not do. Instead, on May 2, 2003—nine months after first entering his guilty pleas and six months after those guilty pleas and plea agreement were vacated—defendant entered new guilty pleas in exchange for a new, agreed-upon disposition. After its colloquy with defendant, the trial court concluded that defendant "understands the nature of the charges[, h]e has admitted the charges and he enters the pleas freely and voluntarily." The trial court specifically found that defendant "has voluntarily waived his rights to a jury trial, his right to confront witnesses against him and his right not to incriminate himself."

The trial court found that defendant had been represented by competent counsel. As noted, defendant did not preserve any issue in respect of his earlier, vacated plea deal and, instead, entered unconditional guilty pleas in exchange for a longer term of incarceration. In those circumstances, the better course lies in hewing to the long-standing precept that maintains that a knowing and voluntary guilty plea operates as a waiver of all claimed deficiencies save for those preserved by defendant or by operation of law. *See, e.g., R.* 3:5–7(d) (providing that "[d]enial of a motion [to suppress] may be reviewed on appeal from a judgment of conviction notwithstanding that such judgment is entered follow-

ing a plea of guilty"). To hold otherwise defeats the proper goal of finality that lies at the core of all plea bargaining: it will have the unintended effect of permitting defendants to negotiate a guilty plea, yet lie in wait to spring what should have been waived issues in an unending quest to better the deal they negotiated. That effect will upend the carefully balanced structure of plea bargaining and cast a pall of chaos on a process geared towards certainty. For those reasons, it should be rejected. In sum, as the question of defendant's vacated August 16, 2002 pleas was preserved neither by defendant nor by operation of law, the issue is waived.

## II.

Even if defendant's appeal in respect of his vacated August 16, 2002 guilty pleas is not procedurally barred, he nevertheless is entitled to no relief. As explained by the trial court when it granted the State's motion to vacate defendant's August 16, 2002 pleas, "the Prosecutor's Office[ ] requested that the plea offer be withdrawn before sentencing." The trial court noted that "[t]he basis of [the] request was that [the assistant prosecutor] had made his offer without talking to the victims (or in the case of endangering the welfare of a child, speaking with the victim's father)." The State asserted before the trial court that "the Prosecutor's Office require[s] prior consultation with the victims [and the assistant prosecutor] confirmed, for the first time, that this had not been done in this case." The trial court concluded that because "the plea offer had been made without consulting with the victims, and since [defendant] had not yet been sentenced, [the trial court] signed an order vacating the pleas and reinstating the not guilty pleas."

In the majority's view, the undisputed fact that defendant's victims—five robbery-at-gunpoint victims and a thirteen-year-old girl with whom he had had sexual intercourse—had not been consulted on the terms of defendant's plea agreement is too slender a reed to sustain vacating defendant's plea agreement.

*Ante* at 622, 926 *A.*2d at 335. According to the majority, defendant is entitled to the contractual basis of the bargain in his first plea agreement. *Ibid.* I cannot agree.

No doubt, due process considerations inform many determinations of whether a plea is to be vacated. Those include the parallel concerns that the process "assure a defendant that in entering into a plea bargain he will not thereby become entrapped" and that "after the agreement has received final judicial sanction, it will be carried out according to its terms." *State v. Thomas,* 61 *N.J.* 314, 322, 294 *A.*2d 57 (1972). The rationale for those concerns is straightforward: "Only if it is generally believed that performance on the part of the State will not disappoint a defendant's reasonable expectations will plea bargaining become and remain a truly effective device in criminal administration. Aside from this pragmatic necessity, essential fairness dictates the same result." *Ibid.* It is for those reasons that it is now blackletter law that if the trial court seeks to impose a sentence in excess of the one bargained for, a defendant is permitted to withdraw his plea. *Ibid.* (explaining that "if the sentencing judge feels that justice will not be done were he to impose the sentence to which the parties have agreed and which the prosecutor recommends, the defendant may then also withdraw his plea").

Those considerations, however, must be juxtaposed against equally compelling concerns. *Rule* 3:9–3(e) makes clear that the interests of justice standard governs whether to vacate a guilty plea prior to the imposition of sentence, an analysis that requires a balance of various competing considerations: the reasonable expectations of the defendant and the State, the defendant's constitutional interests, and the independence and discretion of sentencing courts. *See, e.g., State v. Warren,* 115 *N.J.* 433, 443–47, 558 *A.*2d 1312 (1989) (outlining relevant and competing concerns in plea bargaining). This case starkly illustrates the clash between a defendant's constitutional and contractual interests, and those rights provided both constitutionally and statutorily to victims in New Jersey.

In 1985, the New Jersey Legislature adopted the Crime Victim's Bill of Rights, *N.J.S.A.* 52:4B–34 to –49, which, among other things, granted crime victims the right "[t]o be informed about the criminal justice process[,]" *N.J.S.A.* 52:4B–36(b). It further provides that, at a minimum, the State must consult with a crime victim, through the medium of a victim impact statement, "prior to the prosecutor's accepting a negotiated plea agreement containing recommendations as to sentence[.]" *N.J.S.A.* 52:4B–44(b)(20). The provisions of the Crime Victim's Bill of Rights are implemented in part by the *Attorney General's Standards to Ensure the Rights of Crime Victims,* which require that crime victims be notified of any "negotiated plea[,]" pt. 2, § I.B, at 12–13 (April 28, 1993), *available at* http://www.state.nj.us/lps/dcj/agguide/3victims.pdf, and that "the views of victims of violent crime should be brought to the attention of the court on . . . plea agreements, [and] sentencing." *Id.* at pt. 2, § II.I, at 21.

More importantly, on November 5, 1991, the people of the State of New Jersey amended the Constitution to adopt a "Victim's Rights Amendment." The Constitution now requires that "[a] victim of a crime shall be treated with fairness, compassion and respect by the criminal justice system." *N.J. Const.* art. I, ¶ 22. It also mandates that "[a] victim of a crime shall not be denied the right to be present at public judicial proceedings except when . . . properly sequestered" and that "[a] victim of a crime shall be entitled to those rights and remedies as may be provided by the Legislature." *Ibid.*

In striking the balance required between those competing considerations—defendant's rights versus his victims' rights—the majority concludes that defendant's rights must take precedence, and, therefore, notwithstanding the uncontradicted fact that defendant's victims had not been heard in respect of his August 16, 2002 plea deal, that plea agreement should not have been vacated. Because relegating victim's rights to a constitutional backwater renders them illusory, I cannot agree.

We have made clear that "[t]he withdrawal of a guilty plea is within the broad discretion of the trial court[,]" *State v. Bellamy,* 178 *N.J.* 127, 135, 835 *A.*2d 1231 (2003), a standard that is breached only if the "decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis," *Flagg v. Essex County Prosecutor,* 171 *N.J.* 561, 571, 796 *A.*2d 182 (2002) (citation and internal quotation marks omitted). And, nothing in those proceedings—during which, based on considerations of the victims' rights, the trial court granted the State's motion to vacate defendant's plea—even approaches an abuse of that broad discretion. The trial court's reasons for vacating defendant's August 16, 2002 pleas were cogent, reasonable, and consistent with the Victim's Rights Amendment to our Constitution and the Crime Victim's Bill of Rights. Under those circumstances, "if a judge is satisfied that the State has made an honest mistake in determining the terms of a plea offer, there is no reason why the State should not be permitted to withdraw the offer, provided the application is made before the date of sentence." *State v. Veney,* 327 *N.J.Super.* 458, 461, 743 *A.*2d 888 (App.Div.2000). That logic should be our guide and, if it is, then the same result should obtain here.

## III.

For the foregoing reasons, I respectfully dissent.

*For reversal/reinstatement/remandment*—Chief Justice ZAZZALI, and Justices LONG, LaVECCHIA, ALBIN, WALLACE, and HOENS—6.

*For affirmance*—Justice RIVERA–SOTO—1.