**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3174-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SHAROD C. SAUNDERS,
a/k/a SHAROD SAUNDERS,
SHROD C. SAUNDERS,
TAQEE SAUNDERS, AMIR
TOWNES, KERMON WILLIAMS,
SHAQUAN WILLIAMS, TARIQ
ALI, WALTER BYRD, WALTER
T. BYRD, RONALD DICKINSON,
SHAKEE HILL, ROBERT E.
HOOKS, TARIQ JEFFERSON
ROBERT HOOKS, SHAROD
SANDERS, TALA SAUNDERS,
BAMSEY SAUNDERS, BAM
SAUNDERS, and SHROD
SUNDERS,

     Defendant-Appellant.

_____

Submitted February 28, 2024 – Decided April 2, 2024

Before Judges Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 17-03-0177.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Milton Samuel Leibowitz, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Sharod C. Saunders appeals a March 8, 2022 Law Division order issued by Judge Robert Kirsch denying defendant's petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant alleges he received ineffective assistance of counsel when he pled guilty to first-degree robbery in 2017. After carefully reviewing the record in light of the governing legal principles, we affirm.

I.

We discern the following facts and procedural history from the record. On April 18, 2014, defendant and four co-defendants went to a metal scrapyard in a U-Haul truck with the intention of stealing catalytic converters. The group was armed with handguns and a rifle. Six victims were zip-tied, pistol-whipped, punched, kicked, and held at gunpoint for more than an hour. The assailants

2

A-3174-21

fled the scrapyard with police in hot pursuit. During their flight, one of the co-defendants leaned out of the U-Haul truck's window and shot at police, shattering the police car's windshield.

In March 2017, the five co-defendants[1] were charged by superseding indictment with multiple first-degree counts including attempted murder, N.J.S.A. 2C:5-1(a)(1) and N.J.S.A. 2C:11-3(a)(1); six counts of robbery, N.J.S.A. 2C:15-l(a)(1); six counts of kidnapping, N.J.S.A. 2C:13-l(b)(1); carjacking, N.J.S.A. 2C:15-2(a)(1); and unlawful possession of a handgun by a person who has a prior conviction for a crime designated under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2,[2] N.J.S.A. 2C:39-5(j). In addition to the first-degree charges, defendant was charged with second-degree conspiracy to commit robbery, N.J.S.A. 2C:15-1(a)(1) and N.J.S.A. 2C:5-2(a)(1); second-degree conspiracy to commit kidnapping, N.J.S.A. 2C:13-1(b)(1) and N.J.S.A. 2C:5-2(a)(1); and multiple counts of aggravated assault, eluding-related offenses, and weapons-related offenses. In all, defendant was charged with twenty-seven crimes arising from the scrapyard incident.

---

[1] The four co-defendants—Steven Chambers, Michael Howard, Rafael Clemmons, and Anthony Brailsford—are not parties to this appeal.

[2] Defendant has a prior robbery conviction.

On August 11, 2017, defendant appeared before Judge Kirsch to plead guilty to a single count of first-degree robbery pursuant to a plea agreement. The State agreed to dismiss the remaining twenty-six charges. The plea agreement also recommended an extended-term[3] sentence of twenty-two years in prison subject to NERA, which would run concurrent to the six-year sentence defendant was serving on a prior third-degree conspiracy conviction. The plea agreement offered to defendant was made contingent on all co-defendants pleading guilty.

At the outset of the plea hearing, defense counsel informed the court he met with defendant. They discussed the strength of the State's case and the plea agreement. Counsel further advised the court defendant was afforded the opportunity to ask "whatever questions he may have had." Defendant confirmed his attorney's statements, his intention to plead guilty, and his satisfaction with his attorney's legal representation. The following exchange occurred:

> The Court: Do you feel rushed in making this decision, changing your plea to guilty?
>
> Defendant: No.
>
> The Court: Have you had enough time to think it through?

---

[3] As part of the plea agreement, defendant agreed to an extended-term sentence based on his status as a repeat offender. He was eligible for a life sentence.

A-3174-21

Defendant:  Yes.

The Court:  Have you had enough time to speak to [defense counsel], not only about the plea but about your case itself?

Defendant:  Yes.

The Court:  Has [defense counsel] been patient with you?

Defendant:  Yes.

The Court:  Has he been thorough with you?

Defendant:  Yes.

The Court:  Has he answered all of your questions in a thoughtful manner?

Defendant:  Yes.

The Court:  Are you satisfied with his legal representation?

Defendant:  Yes.

Defendant stated he was voluntarily pleading guilty because he thought it was in his own best interest.  Under oath, defendant confirmed he was not pressured, intimidated, or forced into pleading guilty.

Defendant twice declined an adjournment:

The Court:  Do you want an adjournment of this?

Defendant:  No.

The Court: You're sure about that?

Defendant: Yes.

The Court: Okay. Do you feel that I've been patient with you?

Defendant: Yes.

The Court: Do you feel that the prosecution has put any pressure on you to accept the plea?

Defendant: No.

The Court: How about me—

Defendant: No.

The Court: —any pressure from me? I assure you, I could [not] care less, [defendant], if you accept this plea or not. Do you understand that?

Defendant: Yes.

The Court: I've got to be satisfied that this plea—that your entering into the plea is your decision after having enough time to think this through. Are you assuring me of that?

Defendant: Yes.

The Court: Okay. Now you—you can't wake up tomorrow, next week, next month with what we call buyer's remorse, [defendant], and say you know what, I—I want another go at this. Do you understand that?

Defendant: Yes.

6

The Court: I'll give you an adjournment if you want it. You want it?

Defendant: No.

The Court: Okay. You're sure?

Defendant: Positive.

The court then went through the signed plea form. The following discussion occurred:

The Court: Do you recognize this document [referring to the plea form]?

Defendant: Yes.

The Court: You've read it?

Defendant: Yes.

The Court: Every word of it?

Defendant: Every word.

The Court: You understand all of its terms and conditions?

Defendant: Yes.

The Court: Did you review it with [defense counsel]?

Defendant: Yes.

The Court: Did you have a chance to ask him whatever questions you had about the plea?

Defendant: Yes.

The Court: [A]re all the answers on that—on the plea form, sir, truthful and accurate to the best of your understanding?

Defendant: Yes.

Defendant confirmed he was pleading guilty because he was, in fact, guilty of first-degree robbery. He told the court he has an eleventh-grade education, was not under the influence of any drugs, medication, or alcohol, did not suffer from any mental, physical, or psychiatric condition impairing his judgment, and that he knew he was in court and what he was doing there. The following colloquy ensued:

The Court: [Defendant], did you discuss with [defense counsel] the nature of the allegations set forth in the indictment?

Defendant: Yes.

The Court: Did you discuss the filing of certain pretrial motions that you might have at your disposal?

Defendant: Yes.

The Court: And the possible defenses you may have at trial?

Defendant: Yes.

The Court: Did you discuss with [defense counsel] the possible outcomes if you went to trial?

Defendant: Yes.

The Court: And the consequences of pleading guilty?

Defendant: Yes.

The Court: Did you read the discovery yourself in this case?

Defendant: Yes.

The Court: Did you discuss it with [defense counsel] to your satisfaction?

Defendant: Yes.

The Court: Having had those discussions, again, is it your wish to plead guilty to the [first-degree] offense of robbery as set forth in count four?

Defendant: Yes.

Defendant told the court he understood he was giving up constitutional rights by pleading guilty, including the right to a jury trial, the right to call and cross-examine witnesses, the right to testify at trial on his own behalf, and his presumption of innocence. Defendant was "positive" he did not want a trial.

Defendant then provided a factual basis for the guilty plea, admitting he entered the scrapyard on April 18, 2014 with the intention of committing robbery. He approached a victim and robbed him while his heavily armed co-defendants stood nearby. Judge Kirsch entered the guilty plea, stating:

9

> I'll accept the plea from [defendant]. I find that the plea has been entered into knowingly, voluntarily and intelligently. [Defendant] is clearly an intelligent man. He's also very experienced in the criminal justice system. He's indicated full satisfaction with [defense counsel], that he's had ample opportunity to discuss his case and this plea. He's also indicated that nobody has pressured him or intimidated him to plead guilty, that he does not feel rushed in any regard in entering into this plea. Correct, sir?

Defendant replied, "[c]orrect."

On November 17, 2017, Judge Kirsch sentenced defendant in accordance with the plea agreement to twenty-two years imprisonment subject to NERA, along with restitution, fines, and penalties. On April 11, 2018, we affirmed defendant's sentence on a Sentencing Oral Argument calendar.

On December 6, 2020, defendant filed his initial PCR petition. Judge Regina Caulfield dismissed his petition without prejudice for not specifying facts upon which his claims were based.

On March 4, 2021, defendant filed a second PCR petition—the matter now before us. He also filed a certification, an amended verified petition, a supplemental verification, PCR counsel's brief and appendix, and a letter from co-defendant Clemmons in support of defendant's petition.[4]

---

[4] That letter reads in pertinent part:

On March 1, 2022, Judge Kirsch convened oral argument. On March 8, 2022, he denied defendant's petition by order accompanied by a twenty-five-page written opinion. This appeal follows.

Defendant raises the following contention for our consideration on appeal:

> [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT COUNSEL RENDERED INEFFECTIVE ASSISTANCE DURING THE PLEA NEGOTIATION PROCESS BY DISCLOSING INFORMATION TO THE STATE WHICH LED TO AN UNFAVORABLE PLEA OFFER, FAILING TO PROVIDE HIS CLIENT WITH COMPLETE DISCOVERY, AND INSISTING THAT [DEFENDANT] WOULD GO TO PRISON FOR LIFE IF HE WENT TO TRIAL, ALL OF WHICH PRESSURED HIM INTO A PLEA HE OTHERWISE WOULD NOT HAVE TAKEN.

Defendant raises the following contention in his pro se brief:

> THE PCR COURT ERRED IN DENYING [DEFENDANT]'S PETITION FOR [PCR] WITHOUT

---

> [Defendant] had no idea about [the] robbery. . . . I called him and asked him did he want to make a quick $300 dollars helping me and a few guys load some . . . scrap metal onto a truck, he said ok nor did he have a gun nor did he assault anyone . . . . One of the guys "Rasheed" put a gun to his back when he seen what transpired and didn't want any part[] of a robbery and tried to leave. . . I'm just trying to free [an] innocent man from something he had any [sic] knowledge of or wanted to participate in any criminal wrong-doing. I'm just trying to do the right thing here.

11

GRANTING AN EVIDENTIARY HEARING WHEN THERE WAS A CLEAR SHOWING THAT HIS TRIAL ATTORNEY WAS INEFFECTIVE FOR FAILING TO SUBJECT THE PROSECUTION'S CASE TO A MEANINGFUL ADVERSARIAL TESTING PURSUANT TO BOTH THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE I, ¶ 1, 10 OF NEW JERSEY CONSTITUTION.

II.

We begin our analysis by acknowledging the foundational legal principles governing this appeal. PCR is not a substitute for a direct appeal. State v. Szemple, 247 N.J. 82, 97 (2021). Rather, it serves the same function as the federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, that he or she is entitled to the requested relief. Ibid. The defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992). "Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo." State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020); see also State v. Nash, 212 N.J. 518, 540-41 (2013).

In addressing an ineffective assistance claim, New Jersey courts follow the two-part test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). See State v. Fritz, 105 N.J. 42, 58 (1987). "First, the defendant must show that counsel's performance was deficient." State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Strickland, 466 U.S. at 687). "Second, the defendant must have been prejudiced by counsel's deficient performance." Ibid. (citing Strickland, 466 U.S. at 687).

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The second prong requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id. at 694. This "'is an exacting standard.'" Gideon, 244 N.J. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)).

13

"Prejudice is not to be presumed," but must be affirmatively proven by the defendant. Ibid. (citing Fritz, 105 N.J. at 52, and Strickland, 466 U.S. at 693).

A defendant's right to effective assistance of counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). "'[T]he two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" Id. at 162-63 (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985)). The "defendant must show the outcome of the plea process would have been different with competent advice." Id. at 163.

Short of obtaining immediate relief, a defendant may show that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. Preciose, 129 N.J. at 462-63. However, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997) (citations omitted). A PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion. State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)).

Furthermore, the mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). The PCR court should grant an evidentiary hearing only when "(1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." Vanness, 474 N.J. Super. at 623 (citing State v. Porter, 216 N.J. 343, 354 (2013)).

With respect to the first of these three requirements, "[a] prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Porter, 216 N.J. at 355 (quoting R. 3:22-10(b)). "[V]ague, conclusory, or speculative" allegations are insufficient to warrant an evidentiary hearing. Ibid. (quoting Marshall, 148 N.J. at 158).

## III.

We first address defendant's contention his counsel was ineffective during the plea negotiation process by "pressuring him into [a] guilty plea he otherwise would not have taken." Defendant certified he told trial counsel he was

15

innocent, as he was unaware of the plot to rob the metal scrap yard, and he acted under duress because he was prevented from leaving the area by gunpoint. Defendant claims he wanted to proceed to trial after his co-defendants pled guilty, but once his attorney explained he would face the maximum sentence if he went to trial, defendant "had no choice but to plead guilty as a result of counsel's ineffective assistance."

That assertion is belied by the record, which shows defendant told the court under oath he had not been pressured, rushed, or intimidated into pleading guilty. Defendant rejected two adjournment offers and confirmed he believed pleading guilty was in his own best interest. We agree with Judge Kirsch's finding that defendant's argument that his counsel pressured him into pleading guilty is "a bald, self-serving allegation." See Strickland, 466 U.S. at 687.

## IV.

We likewise reject defendant's contention his plea counsel violated the attorney-client privilege and rendered constitutionally deficient assistance by divulging his duress defense to the State, which, defendant argues, "resulted in the [S]tate demanding that all of the plea offers become contingent."

In the circumstances presented in this matter, Rule 3:12-1 required trial counsel to notify the State of his duress defense. Rule 3:12-1 provides, "[a]

defendant shall serve written notice on the prosecutor if the defendant intends to rely on any of the following sections of the Code of Criminal Justice . . . Duress, [N.J.S.A.] 2C:2-9(a)." The Rule also requires defense counsel to disclose a defendant's duress defense "[n]o later than seven days before the Initial Case Disposition Conference that is scheduled pursuant to R[ule] 3:9-1(e)." Ibid. "If a party fails to comply with this Rule, the court may take such action as the interest of justice requires," including "refusing to allow the party in default to present witnesses in support or in opposition of that defense at trial." Ibid.

Here, on February 3, 2016, trial counsel entered his appearance. On March 3, 2016, counsel filed a notice of intention to rely on a duress defense. On May 8, 2017, an Initial Case Disposition Conference was held. Thus, trial counsel's actions were timely and effective, ensuring defendant would have been able to proffer a duress defense and call witnesses in support of that defense had he gone to trial. In these circumstances, Judge Kirsch correctly determined defendant failed to establish the first prong of the Strickland/Fritz test. See Strickland, 466 U.S. at 687; State v. DiFrisco, 137 N.J. 434, 457 (1994).

Defendant also failed to satisfy Strickland's second prong. See Strickland, 466 U.S. at 687. Defendant's claim trial counsel's actions "resulted in the [S]tate

demanding that all of the plea offers become contingent" is speculative, bald, and unsupported by the record.

In reaching this conclusion, we stress plea bargaining is "'firmly institutionalized in this State as a legitimate, respectable and pragmatic tool in the efficient and fair administration of justice.'" State v. Means, 191 N.J. 610, 618 (2007) (quoting State v. Taylor, 80 N.J. 353, 360-61 (1979)). "The cornerstone of the plea bargain system is the 'mutuality of advantage' it affords to both defendant and the State." Taylor, 80 N.J. at 361 (citations omitted). Although "[a] defendant has . . . 'the ultimate authority' to determine 'whether to plead guilty,'" Florida v. Nixon, 543 U.S. 175, 187 (2004) (citations omitted), the decision whether to engage in plea bargaining rests with the State. See State v. Williams, 277 N.J. Super. 40, 46 (App. Div. 1994).

It is also well-established that "the State may set conditions on a plea offer and may withdraw its acceptance of the agreement if the conditions are not met." State v. Conway, 416 N.J. Super. 406, 411 (App. Div. 2010). "One common and unobjectionable example is a plea offer contingent on all co-defendants accepting a plea deal." Ibid. See also State v. Smith, 306 N.J. Super. 370, 382 (App. Div. 1997) ("Plea agreements contingent upon joint pleas of

18

co-defendants are commonplace and based to some degree upon the prosecutor's evaluation of tactical decisions and proofs at trial.").

Here, Judge Kirsch acknowledged the prosecutor's authority to engage in plea bargaining and set conditions on the plea offer. See Conway, 416 N.J. Super. at 412. Defendant was charged as part of a thirty-count indictment with four co-defendants. Thus, Judge Kirsch correctly found it "entirely reasonable" and "legally permissible" for the State to make the pleas contingent on all defendants pleading guilty.

Furthermore, there is also no evidence supporting defendant's contention the State made the pleas contingent because of his duress defense. But even were we to accept for the sake of argument the prosecutor's decision was because of that defense, defendant has not established a "reasonable probability" that he would not have pled guilty but for counsel's actions. See State v. Alvarez, 473 N.J. Super. 448, 457 (App. Div. 2022). We emphasize if defendant went to trial and was convicted of all twenty-seven charges against him, he faced a term of imprisonment greater than life. We are satisfied it would have been unreasonable in these circumstances to reject the State's plea offer, which significantly reduced defendant's sentencing exposure and ensured the new

sentence would run concurrent to the sentence he was already serving on his prior conspiracy conviction.

Moreover, the record clearly shows defendant on multiple occasions during the plea hearing affirmed his desire to plead guilty instead of proceeding to trial. Judge Kirsch concluded defendant "weighed all the evidence, including the letter purportedly [written by] Mr. Clemmons,[5] and the potential outcomes, and determined it was in his best interest to plead guilty instead of going to trial and presenting a duress defense. There . . . is no ineffectiveness of counsel in such a circumstance." We agree.

## V.

We need only briefly address defendant's contention "counsel failed to provide him with all discovery despite his repeated requests, so he was not fully informed as to the [S]tate's case and had no confidence in counsel's ability to

---

[5] We note Clemmons's letter does not comply with the requirements of Rule 3:22-10(c), which provides "[a]ny factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." See Cummings, 321 N.J. Super. at 170. Furthermore, the letter is contradicted by defendant's sworn testimony. At the plea hearing, defendant was asked, "it was the intent of the—the group that you were with, those in the indictment that we named, to rob the place. Correct?" Defendant responded, "[i]t was my intent." (Emphasis added).

defend him at a trial." More specifically, defendant argues his attorney provided him with only six of thirty computer disks comprising the State's discovery. He also claims some of the six disks were duplicates.

The PCR court correctly determined defendant's discovery-related allegations are "bald, self-serving, [and] unsupported" by the record. During his plea colloquy, defendant confirmed he was not forced to plead guilty, had time to speak with his attorney and review discovery, and was satisfied with his representation. Defendant's sworn testimony directly contradicts his assertion trial counsel did not review discovery with him. Judge Kirsch therefore correctly determined defendant did not rebut "the strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance as required under prong one of Strickland, and this claim of ineffective assistance of counsel fails the two-prong Strickland test."

We add that even assuming for the sake of argument counsel failed to share with defendant all computer disks storing the State's discovery, defendant has failed to establish what is on the disks that were not provided to him by his counsel or that he would have rejected the State's favorable guilty plea based on discovery he did not review prior to pleading guilty. He therefore has failed to establish the second prong of the Strickland/Fritz test. See Lafler, 566 U.S. at

21

163 ("[D]efendant must show the outcome of the plea process would have been different with competent advice.").

In sum, defendant failed to establish a prima facie case of ineffective assistance of counsel or prejudice resulting from counsel's representation. See Strickland, 466 U.S. at 687. Furthermore, Judge Kirsch correctly determined there are no material issues of disputed fact in the existing record. See Porter, 216 N.J. at 355. Defendant has thus failed to establish a basis for convening an evidentiary hearing, much less to overturn his guilty plea conviction. See ibid.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3174-21