NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1008-20

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JAIME CAMBRELEN, a/k/a
JAIME J. CAMBRELEN, and
JAIME CAMBRELENE,

      Defendant-Appellant.

> **APPROVED FOR PUBLICATION**
>
> **June 24, 2022**
>
> **APPELLATE DIVISION**

Argued May 31, 2022 – Decided June 24, 2022

Before Judges Messano, Rose and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 20-01-0031 and Accusation No. 20-08-0539.

Al Glimis, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Al Glimis, on the brief).

John J. Santoliquido, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Cary S. Shill, Acting Atlantic County Prosecutor, attorney; John J. Santoliquido, of counsel and on the brief).

Barry H. Evenchick argued the cause for amicus curiae Association of Criminal Defense Lawyers of New

Jersey (Pashman Stein Walder Hayden, PC, attorneys; Barry H. Evenchick, of counsel and on the brief; Joshua P. Law, on the brief).

Carol M. Henderson, Assistant Attorney General, argued the cause for amicus curiae Office of the Attorney General of New Jersey (Matthew J. Platkin, Acting Attorney General, attorney; Carol M. Henderson, of counsel and on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

In this appeal, we consider the propriety of a negotiated plea agreement provision, permitting the State to revoke its sentencing recommendation if the defendant is arrested on new charges that are not adjudicated prior to sentencing. Because we conclude a no-new-arrest or no-new-charges provision violates a defendant's right to due process and is fundamentally unfair, we vacate defendant's conviction and remand the matter to allow the parties to negotiate a new plea agreement or permit defendant to withdraw his guilty plea. Our decision has no bearing, however, on those plea agreement provisions that limit the State's right to revoke its sentencing recommendation or recommend a harsher sentence if a defendant fails to appear at sentencing, provided the defendant is afforded a fair hearing pursuant to established case law.

A-1008-20

2

I.

In August 2020, while detained pretrial, defendant Jaime Cambrelen pled guilty to first-degree unlawful possession of a handgun by a person previously convicted of a NERA[1] crime, N.J.S.A. 2C:39-5(j), charged in a twenty-three count Atlantic County indictment. The same indictment charged three co-defendants with various offenses arising from the shooting death of Bernard Murphy. Defendant was not charged with homicide-related offenses.[2]

During his plea allocution, defendant admitted he "c[a]me into possession of a handgun" on October 17, 2019, on Florida Avenue in Atlantic City, when he "picked it off the ground."[3] Defendant acknowledged he did not have a permit to carry the handgun and previously had been convicted of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), a NERA offense. Defendant also waived his rights to indictment and trial by jury, and pled guilty to Atlantic County Accusation No. 20-08-0539, charging him with fourth-degree unlawful

---

[1] No Early Release Act, N.J.S.A. 2C:43-7.2.

[2] Defendant also was charged with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1); two counts of fourth-degree tampering with evidence, N.J.S.A. 2C:28-6(1); fourth-degree obstruction of the administration of law, N.J.S.A. 2C:29-1(a); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2).

[3] The record reveals defendant was not involved in the shooting, but immediately thereafter picked up the gun from the ground where Murphy's body had fallen.

A-1008-20

possession of a weapon, N.J.S.A. 2C:39-5(d), for possessing a shank while in jail pending trial.

In exchange for defendant's guilty pleas, the State made the following sentencing recommendation, reflected in paragraph 13 of the plea form:

> Aggregate sentence of 10 years in prison must serve 42 months without parole, Ind[ictment No.] 20-01-00031; 10 years in prison must serve 42 months without parole (Graves)[4] concurrent to Acc[usation No.] 20-08-00539; 18 months in prison. Truthful testimony. Waive right to appeal, R. 3:9-3(d). Bail and detention continued. No show, no rec[ommendation]. New charges, no rec[ommendation]. Forfeit weapons and property seized. State to move for extended term sentence.
>
> [(Emphasis added).]

Paragraph 21 of the plea form sets forth the remainder of the parties' representations:

> Defendant to argue for 8 years in prison[;] must serve 42 months w[ith]o[ut] parole. State does not agree to sentence a degree lower.[5]
> Defendant to move to reopen detention hearing and for release[.] R. 3:4A(b)(3). State opposes motion.

---

4 Graves Act, N.J.S.A. 2C:43-6(c).

5 The plea form reflects defendant's anticipated motion for a downward departure on the first-degree charge, which would permit sentencing in the second-degree range, i.e., between five and ten years' imprisonment. See N.J.S.A. 2C:43-6(a)(2).

4

During the plea hearing, the trial court explained the ramifications if defendant failed to appear at sentencing or was arrested on new charges while he was released from jail:

> Now, the State is going to move for an extended term. And I will consider that motion, of course, as any motion that's presented. But the real exposure you have on such a motion is that if you fail to come back on the date I give you for sentencing, or if you come back having incurred new charges, then the State can indict you for whatever new charges you may have incurred. You could be sentenced by me in my discretion, which could include granting the State's motion for an extended term. You'd face then up to the term of your natural life for the most serious offense here.
>
> So, if you want the recommendation here, and any opportunity for more lenient treatment, you'll be on time and out of trouble.

Defendant acknowledged his understanding of the terms of the plea agreement. The court released defendant from custody for a thirty-day period "to allow him to make arrangements for his affairs" before serving his prison sentence, and imposed several conditions of release, including that defendant "commit no new offenses." The court reiterated the impact of violating a condition of his release or committing a new offense; defendant again acknowledged his understanding of the potential ramifications. He was released from jail, pending the September 24, 2020 sentencing date.

On September 22, 2020, two days before his scheduled sentencing, defendant was arrested and charged with multiple drug and weapons offenses, including first-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(b)(1). The charges arose from a motor vehicle stop in Atlantic City.

According to the affidavit of probable cause supporting the complaint-warrant, defendant was lying in the rear seat when the car was stopped. The driver did not possess a valid driver's license and could not provide police with the name of the owner. Police observed the odor of marijuana emanating from the vehicle, and a clear plastic baggie containing what appeared to be crack cocaine in the center console cup holder.[6] A search of the car yielded a handgun in the glove compartment and large quantities of drugs in the trunk.

A Law Division judge, who was not the sentencing judge, granted the State's motion for pretrial detention, finding probable cause based on the officer's affidavit and police report. Defendant consented to detention.

After defendant's September 22, 2020 arrest, the State withdrew its sentencing recommendation, moved for a discretionary extended term as a

---

[6] The New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31 to - 56, became effective on February 22, 2021. Under the Act, an "odor of cannabis or burnt cannabis" cannot create a "reasonable articulable suspicion of a crime" under most circumstances. N.J.S.A. 2C:35-10c(a). Because that limitation is prospective, it has no bearing on this appeal.

persistent offender under N.J.S.A. 2C:44-3(a), on the first-degree weapons offense, and argued for a twenty-year prison sentence with a parole disqualifier of ten years under the Graves Act. Maintaining his innocence on the "constructive possession-type" new charges, defendant opposed the State's motion and moved for sentencing in accordance with the terms of the plea agreement.

Following argument at the October 26, 2020 sentencing hearing, the trial court first determined defendant's arrest on new charges violated the terms of the plea agreement, and permitted the State to withdraw its sentencing recommendation. Although the court recognized "defendant [wa]s merely charged" and "maintain[ed] his innocence on those charges," the court found "probable cause to believe that [defendant] committed those offenses based on the complaint-warrant, his current status, and detention on those charges."

The trial court also determined the State satisfied the conditions of N.J.S.A. 2C:44-3(a), and granted the State's motion for an extended term on the first-degree weapons offense. Finding aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will re-offend); six, N.J.S.A. 2C:44-1(a)(6) (extent and seriousness of defendant's prior record); and nine, N.J.S.A. 2C:44-1(a)(9) (general and specific deterrence), "clearly and substantially preponderate[d] over the absence of mitigating factors," the court sentenced

A-1008-20

defendant to an aggregate prison term of sixteen years with an eight-year parole disqualifier. Citing State v. Pierce, 188 N.J. 155 (2006), the court was satisfied, "given the defendant's relative youth here, [and] the nature of his prior record that sentencing in the midrange of the ordinary term would be appropriate to effectively deter this defendant."[7]

Defendant filed a direct appeal of his sentence, which this court heard on an excessive sentencing calendar pursuant to Rule 2:9-11. Thereafter, we ordered full briefing and placement on a plenary calendar. State v. Cambrelen, No. A-1008-20 (App. Div. June. 7, 2021).

Defendant now seeks a remand for resentencing to a ten-year prison term with a forty-two-month parole disqualifier pursuant to the State's original recommendation. Defendant also argues his sentence is excessive because it was increased substantially based on an unadjudicated arrest, and because the court double counted defendant's aggravated assault conviction. More particularly, he raises the following points for our consideration:

POINT I

THE SENTENCING COURT ABUSED ITS DISCRETION BY VACATING THE BARGAINED-

---

[7] In Pierce, the Court held if the trial court determines the defendant is eligible for an extended term as a persistent offender, "the range of sentences, available for imposition, starts at the minimum of the ordinary-term range and ends at the maximum of the extended-term range." 188 N.J. at 169. Here, that range was ten years to life imprisonment. N.J.S.A. 2C:43-6(a)(1); N.J.S.A. 2C:43-7(a)(2).

FOR SENTENCE AND INCREASING DEFENDANT'S SENTENCE BECAUSE OF A NEW CHARGE. THE SENTENCING PROCEDURE WAS CONTRARY TO CASE LAW, VIOLATED DEFENDANT'S DUE PROCESS RIGHTS AND WAS CONTRARY TO THE PRESUMPTION OF INNOCENCE. (U.S. CONST. AMEND. XIV; N.J. CONST. ART. I, [¶] 1).

A. Case [L]aw does not Allow a Sentence to be Increased Based on a Mere Arrest.

B. The Increase in Defendant's Sentence Because of his Arrest Violated his Due Process Rights and was Contrary to the Presumption of Innocence and Fundamental Fairness.

## POINT II

THE SENTENCE IMPOSED WAS EXCESSIVE, CONTRARY TO THE PRINCIPLES OF THE CODE OF CRIMINAL JUSTICE AND DOUBLE COUNTED AN ELEMENT OF THE OFFENSE. THE MATTER MUST BE REMANDED FOR RESENTENCING.

Citing an unpublished case from this court, the State counters the trial court may consider a defendant's prior arrests that did not result in convictions during sentencing.[8] Because the court found probable cause that defendant

---

[8] We recognize how readily accessible unreported decisions have become via the internet. We caution the bar, however, that until the Supreme Court decides otherwise, unpublished opinions lack precedential value, R. 1:36-3, and therefore their analytical utility is at best marginal, see Trinity Cemetery Ass'n v. Twp. of Wall, 170 N.J. 39, 48 (2001) (Verniero, J., concurring) (stating unpublished opinions "serve no precedential value, and cannot reliably be considered part of our common law").

committed the newly charged offenses, the State further claims defendant's right to due process was not violated.

After full briefing, we listed the matter for argument and invited the Office of the Attorney General of New Jersey (Attorney General), and the Association of Criminal Defense Lawyers of New Jersey (ACDL-NJ) to appear as amici curiae, focusing on the appropriate remedy should this court deem the no-new-charges provision invalid. Both offices accepted our invitation, filed briefs, and appeared at oral argument.

Emphasizing the lack of probable cause for the new charges, the ACDL-NJ argues the trial court erroneously considered the municipal judge's finding of probable cause and violated defendant's constitutional rights by enhancing defendant's sentence based on those charges. Similar to defendant, the ACDL-NJ urges us to remand for resentencing pursuant to the terms of the negotiated plea agreement. Following argument, the ACDL-NJ filed supplemental correspondence clarifying its position, contending the provision is invalid because it permits an enhanced sentence based on unadjudicated charges that are unrelated to the admitted crimes.

As a preliminary matter, the Attorney General urges us to leave undisturbed the no-show/no-recommendation condition of negotiated plea agreements as sanctioned by New Jersey courts in <u>State v. Shaw</u>, 131 N.J. 1

A-1008-20

10

(1993) and State v. Subin, 222 N.J. Super. 227 (App. Div. 1988). Contending a sentencing court cannot ensure the State would have consented to the same plea agreement absent the offending provision, the Attorney General also argues that should we deem the provision invalid, the plea agreement should be vacated and the parties returned to their original positions. The Attorney General asserts the parties should have the opportunity to renegotiate a new plea agreement or proceed to trial.

## II.

We commence our de novo review, see State v. Nance, 228 N.J. 378, 393 (2017), with well-established principles. "'Plea bargaining [is] firmly institutionalized in this State as a legitimate, respectable and pragmatic tool in the efficient and fair administration of justice.'" State v. Means, 191 N.J. 610, 618 (2007) (quoting State v. Taylor, 80 N.J. 353, 360-61 (1979)). "A key component of plea bargaining is the 'mutuality of advantage' it affords to both [the] defendant and the State." Id. (quoting Taylor, 80 N.J. at 361). Thus, in many respects, a plea agreement is governed by contract principles, but an agreement between the State and a defendant is not binding on the sentencing judge. See id. at 622. As the Court observed in Means:

> When two parties reach a meeting of the minds and consideration is present, the agreement should be enforced. The essence of a plea agreement is that the parties agree that [the] defendant will plead guilty to

certain offenses in exchange for the prosecutor's recommendation to dismiss other charges and suggest a certain sentence, all subject to the right of the court to accept or reject the agreement in the interests of justice.

[Ibid.]

Moreover, "[t]he validity of a plea agreement is guided by considerations of fundamental fairness and public policy." Subin, 222 N.J. Super. at 237. Indeed, "[t]he overall consideration when evaluating a particular plea agreement is fairness." Ibid.

In Subin, we held "a component of a plea agreement that provides for an increased sentence when a defendant fails to appear that is voluntarily and knowingly entered into between a defendant and the State does not offend public policy." Id. at 238-39. We recognized, however, that the enhanced sentence may not be imposed automatically simply because a defendant failed to appear. Id. at 239; see also State v. Wilson, 206 N.J. Super. 182, 184 (App. Div. 1985) (holding "a sentence based entirely upon non[-]appearance in court is an illegal sentence"). We reiterated the sentencing court may consider the defendant's reasons for failing to appear, but those reasons "'must . . . be relevant to identified sentencing guidelines.'" Subin, 222 N.J. Super. at 239 (quoting Wilson, 206 N.J. Super. at 184). That is because a trial court must sentence a defendant in accordance with the applicable sentencing provisions of the Code of Criminal Justice, N.J.S.A. 2C:1-1 to 104-9, which do not specifically include

the "defendant's appearance for sentence [a]s one of those criteria." Wilson, 206 N.J. Super. at 184.

Thereafter, the Supreme Court in Shaw established guidelines to ensure sentencing courts did not automatically impose an enhanced sentence under a Subin plea.[9] 131 N.J. at 15-17. In Shaw, the defendants in separate cases faced mandatory minimum terms of imprisonment for distribution of drugs within 1000 feet of school property, N.J.S.A. 2C:35-7. Id. at 3-6. In both cases, the negotiated plea agreements contained a no-show/no-waiver provision of the mandatory minimum term. Id. at 3. The Court upheld the provision but cautioned: "Not every violation of the waiver conditions by an accused defendant will result in automatic imposition of a mandatory sentence." Id. at 16. The Court elaborated:

> The automatic imposition of enhanced punishment for a non-appearance without holding a hearing or considering an explanation would be unwarranted. The court must provide a fair hearing to determine whether the violation of the terms of the arrangement warrants its revocation. The process is deliberate, not perfunctory. The court will consider the explanation for the non-appearance in the context of all the circumstances . . . . The court will then determine whether in the circumstances the breach is material to the plea and therefore warrants revocation of the

---

[9] The courts and counsel commonly refer to a plea agreement, permitting the State to revoke its sentencing recommendation, or recommend a harsher sentence if a defendant fails to appear for sentencing or incurs new charges while released pending sentencing, as a "Subin plea."

A-1008-20

13

prosecutor's waiver of mandatory sentence. [(<u>Shaw</u> hearing)]. . . . Obviously, judges are not automatons, and if the enforcement of the plea would be fundamentally unfair, courts, as the "fulcrum" of the system, retain the necessary judicial power under <u>Rule</u> 3:21-1 to avoid a miscarriage of justice. <u>See</u> <u>State v. Smullen</u>, 118 N.J. 408, 416-18 (1990) (allowing court before sentencing to permit defendant to withdraw guilty plea in the interests of fundamental fairness or to avoid miscarriage of justice).

[<u>Id.</u> at 16-17 (citation omitted).]

Notably, the provisions at issue in <u>Shaw</u> and <u>Subin</u> permitted the State to withdraw its recommendation and seek an enhanced penalty not only if the defendants failed to appear at sentencing, but also if they were arrested after their release from custody but before sentence was imposed. <u>Id.</u> at 4; <u>Subin</u>, 222 N.J. Super. at 229. Both cases, however, were decided under the no-show provisions of the plea agreements. <u>Shaw</u>, 131 N.J. at 17-19; <u>Subin</u>, 222 N.J. Super. at 237-40. Following the Court's guidance in <u>Shaw</u>, we have upheld no-show provisions, provided the trial court considered the defendant's reasons for non-appearance. <u>See, e.g.</u>, <u>State v. Diggs</u>, 333 N.J. Super. 7, 11 (App. Div. 2000) ("Because the trial judge found [the] defendant's non-appearance to be willful and without good cause, the prosecutor's revocation of the waiver of the minimum term was permitted.").

In the present matter, however, defendant's sentence was enhanced because he was arrested while released pending sentencing, not for his failure to

appear. Because defendant's arrest on the new charges led to his detention, he was – of course – escorted from jail to his rescheduled sentencing hearing. Thus, only the "[n]ew charges, no rec[ommendation]" term of the <u>Subin</u> plea was triggered. Recognizing defendant maintained his innocence on the new charges, the trial court nonetheless was persuaded probable cause had been established that defendant committed the offenses and defendant therefore violated the terms of the plea agreement.[10]

After granting the State's motion for an extended term and imposing sentence, the court permitted defendant to "say anything [he]'d like to say." Acknowledging he had "made a lot of bad decisions in [his] life," defendant told the court:

> [M]y intentions was [sic] to come here, and I didn't expect to catch these charges . . . because these charges is [sic] what are making me eligible for this extended term. I was just catching a ride home. I know [the new charges have] nothing to do with this case. It's a whole 'nother [sic] case. But I didn't know what was going on. I was just basically a victim of being at the wrong place at the wrong time, you know?
>
> . . . .
>
> I take full responsibility for anything I ever did. As you can see in your paperwork probably, any time I ever got in trouble I came and turned myself in. . . . I

---

[10] At the time of defendant's sentencing hearing, the new charges were pending presentation to a grand jury. We were advised during oral argument at the excessive sentencing hearing that the matter had been indicted.

take full responsibility for what I did.  But with these new charges, I could honestly tell you I had nothing to do with that.  . . .  I was getting a ride home.

After hearing additional arguments from the attorneys, the court reiterated its reasons for granting the State's motion for an extended term and sentencing defendant to an aggregate sixteen-year prison term with an eight-year parole disqualifier.

On appeal, defendant argues the trial court failed to conduct the "deliberate" process articulated by the Court in Shaw.  See 131 N.J. at 16-17. Instead, the court voided the plea agreement and granted the State's motion before affording defendant the opportunity to speak on his own behalf. Defendant contends the court therefore failed to:  make factual findings concerning his assertions; weigh the likelihood of his conviction on the new charges against "the protections of the presumption of innocence"; and advise defendant he could present the testimony of witnesses or other evidence for the court's consideration.  In sum, defendant argues he "was entitled to more due process protections than that afforded defendants alleged to have breached an agreement to appear at sentencing because the breach here involves a new charge of which defendant is presumed innocent."

The State counters a Shaw hearing was unnecessary in this matter because the purpose of the hearing is for the court to consider defendant's reasons for

failing to appear at sentencing. Because the municipal judge issued the complaint-warrant after making a probable cause determination, and the trial court determined the new charges were therefore supported by probable cause, the State contends defendant was not deprived of his right to due process. According to the State: "That is due process in operation." We disagree.

In our view, that portion of the <u>Subin</u> plea agreement permitting the State to withdraw its sentencing recommendation and seek an enhanced penalty, or request an alternative enhanced sentence that was agreed upon at the time of the guilty plea, based solely on defendant's arrest on new charges is fraught with constitutional peril. Although defendant in the present matter denied the charges when afforded the opportunity to speak at the sentencing hearing, another similarly situated defendant may be unable to explain the circumstances of a new arrest without self-incrimination. In either case, the defendant's Fifth Amendment rights hang in the balance.

Conversely, defendants who violate a <u>Subin</u> plea by failing to appear at sentencing for reasons other than committing new crimes may explain their non-appearance without jeopardizing their constitutional rights. For example, a defendant may have been ill and under a doctor's care on the original sentencing date. <u>See, e.g.</u>, <u>Wilson</u>, 206 N.J. Super at 183. Under those circumstances, the

due process protections afforded pursuant to a <u>Shaw</u> hearing would not contravene the Fifth Amendment.

In the present matter, the trial court granted the State's motion for an extended term premised on a finding of probable cause that defendant committed the new charges and thus violated the no new-charges provision of the negotiated plea agreement. Ultimately, however, those charges may result in an acquittal or dismissal, thereby causing an unjust result. <u>See</u> <u>State v. Melvin</u>, 248 N.J. 321, 347-52 (2021) (holding the due process principles inherent in Article I, paragraph 1 of the New Jersey Constitution and the doctrine of fundamental fairness protected the defendant from a sentencing judge's improper use of facts related to charges for which the defendant was acquitted).

Because the charges were pending when defendant was sentenced, the allegations were unproven. As the Attorney General candidly acknowledged during oral argument before us, if defendant is acquitted on the new charges, he would have a valid basis to move for resentencing. <u>See</u> <u>State v. Murray</u>, 162 N.J. 240, 247 (2000) (providing an illegal sentence "may be corrected at any time before it is completed"); <u>see also</u> <u>R.</u> 3:21-10(b)(5). But that potential remedy does not cure the present injustice. We discern no constitutionally significant distinction between a sentencing court's consideration of acquitted conduct and pending charges to enhance a defendant's sentence. "Such a

practice defies the principles of due process and fundamental fairness." Melvin, 248 N.J. at 349. We invalidate the no-new-charges provision here because, as defendant and the ACDL-NJ argue, the provision unlawfully permits the court to enhance a defendant's sentence based on unadjudicated charges that are unrelated to the admitted crimes. We therefore hold only a no-new-arrest or no-new-charges portion of a Subin plea provision is void ab initio.

We hasten to add the State is not prejudiced by our holding. The State may argue a defendant's arrest on new charges while released pending sentencing should be considered by the trial court when weighing the aggravating and mitigating factors for the crimes to which defendant pled guilty. See, e.g., State v. Rice, 425 N.J. Super. 375, 382 (App. Div. 2012) ("Adult arrests that do not result in convictions may be 'relevant to the character of the sentence . . . imposed.'" (quoting State v. Tanksley, 245 N.J. Super. 390, 397 (App. Div. 1991))). The State may also argue any sentence on the new charge should run consecutively to the sentence imposed on the initial charges. See N.J.S.A. 2C:44-5(h) (mandating consecutive terms of imprisonment, absent certain findings, when a defendant is sentenced for an "[o]ffense committed while released pending disposition of a previous offense").

Having invalidated the offending plea provision, we turn to the appropriate remedy. Citing State v. Hess, 207 N.J. 123 (2011), the Attorney

General essentially argues removing the no-new-charges provision of the plea agreement eliminates a key term of that agreement. Because the State opposed defendant's application for release pending sentencing, it may have offered defendant a higher sentence without the inclusion of the provision. As such, "in the absence of the original plea agreement's terms, there may be no meeting of the minds between the State and defendant." Id. at 160. The Attorney General thus argues the parties should be permitted to return to their "pre-plea positions" to negotiate a new plea agreement or proceed to trial. See State v. Warren, 115 N.J. 433, 450 (1989) (holding a plea "must be vacated" if it was premised on a "negotiated-sentence practice" that was "unauthorized and improper" under the Code); see also State v. Bell, __ N.J. __, __ (2022) (slip op. at 36).

Recently, in Bell, the Court considered the validity of the defendant's convictions for two counts of second-degree leaving the scene of an accident resulting in death, N.J.S.A. 2C:11-5.1, following a guilty plea. Id. at __ (slip op. at 2). Upholding our decision that the defendant committed only one crime, the Court disapproved of our modification of his sentence to five years. Id. at __ (slip op. at 35-36). The Court therefore reversed our "judgment to amend sua sponte the sentence imposed by the trial court in a manner not contemplated by the terms of the plea agreement negotiated by the parties in good faith and

A-1008-20

20

approved by the trial court under Rule 3:9-2."[11]  Id. at __ (slip op. at 4).  The Court concluded the proper remedy was a remand "to permit the parties to negotiate a new plea agreement that the trial court finds acceptable or otherwise schedule the case for trial."  Ibid.

Although the circumstances in the present matter are distinguishable from those in Bell, the Court's reasoning applies with equal force.  We therefore remand the matter to the trial court to afford the parties the opportunity to renegotiate the plea agreement without the offending no-new-charges provision or proceed to trial.

Having substantially agreed with the contentions raised in point I of defendant's merits brief, our disposition makes it unnecessary to consider the arguments raised in point II.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[11]  Pursuant to Rule 3:9-2, the trial court may refuse to accept a guilty plea.